# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ITIUS D. WYNN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1640-GMS |
| | ) | |
| DAVID PIERCE, Warden, and | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

Itius D. Wynn. *Pro se* petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

# MEMORANDUM OPINION

_____, 2016
Wilmington, Delaware

Sleet, District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 and an amended petition (hereinafter referred to as "petition") filed by petitioner Itius

Wynn ("Wynn"). (D.I. 3; D.I. 8)  The State filed an answer in opposition. (D.I. 21)  For the

reasons discussed, the court will deny the petition.

## I.    BACKGROUND

As set forth by the Delaware Supreme Court, the facts leading up to Wynn's conviction

are as follows:

> On October 31, 2009, Dominique Daniago hosted a small party at her house in
> Wilmington, Delaware.  At that party were her brother, Michael Potts, and his friend,
> Kyle Poplos.  At around 1:00 a.m., the three, along with several other guests, were sitting
> outside Ms. Daniago's front porch and drinking when they were approached by two men,
> later identified as the defendant Wynn and Andres Colon ("Colon").  Wynn and Colon
> asked if they could drink with the group, but were told no.  One of the guests on the
> porch then made a derogatory remark about President Obama, and a heated argument
> broke out between the two groups.  As Wynn and Colon left, one of Ms. Daniago's guest
> overheard one of the two men say "We'll be back."  After Wynn and Colon departed, Ms.
> Daniago and her guests went inside her home.
>
> About 15-20 minutes later, Wynn and Colon returned to Ms. Daniago's house with a
> third (unidentified) person.  Upon their return, Ms. Daniago came outside and tried to
> defuse the situation by telling Wynn and his friends that she did not want any problems at
> her home, and by asking them to leave.  During that conversation, the other guests inside
> Ms. Daniago's house came back outside onto the porch, and another argument broke out
> between the two groups.  At that point, Wynn pulled out a handgun and fired three shots
> at the group on the porch.  One of the shots struck Potts in the chest and another shot
> struck Poplos in the hand.  Wynn, Colon, and the third unidentified man then fled.
>
> Shortly thereafter, the police received a report of a white Acura that had been seen fleeing
> from the scene of the shooting.  Wilmington Police Officers Cavanaugh and Colmery
> were parked in the parking lot of the Concord Professional Center when they saw a car
> drive by that matched that description.  Upon conducting a felony traffic stop, the police
> found Wynn and Colon inside the car and saw a chrome handgun under the front
> passenger seat.  Wynn and Colon were immediately arrested.

*Wynn v. State*, 23 A.3d 145, 146 (Del. 2011).

On December 21, 2009, a New Castle County grand jury indicted Wynn on two counts of first degree assault, five counts of first degree reckless endangering, seven counts of possession of a deadly weapon during the commission of a felony (PDWDCF), possession of deadly weapon by a person prohibited, and criminal impersonation. *See Wynn*, 23 A.3d at 147. During final case review, Wynn pled guilty to two counts of second degree assault, two counts of PDWDCF, and one count of first degree reckless endangering. *Id.* In exchange for Wynn's guilty plea, the State recommended a sentence of eight years of incarceration at Level V followed by probation, and agreed to dismiss all remaining charges in the instant case and two other pending cases. (D.I. 21 at 3) In August 2010, the Superior Court sentenced Wynn to a total of thirty-one years of incarceration, suspended after twenty-four years for a period of probation. Wynn filed a *pro se* notice of appeal one day after the thirty-day appeal period. *Id.* The Delaware Supreme Court initially issued a notice to Wynn to show cause, but discharged the notice and directed Wynn's defense counsel to file a formal notice of appeal. After filing a formal notice of appeal, Wynn's defense counsel moved to withdraw as Wynn's counsel under Delaware Supreme Court Rule 26(c). By order dated March 15, 2011, the Delaware Supreme Court: (1) determined that defense counsel's failure to file a timely direct appeal constituted ineffective assistance of counsel; (2) granted defense counsel's motion to withdraw; and (3) appointed new counsel to represent Wynn on direct appeal. *Id.*

In September 2010, in addition to his *pro se* notice of appeal, Wynn filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61. (D.I. 21 at 4) The Superior Court dismissed the Rule 61 motion without prejudice because of his pending appeal. In addition, through his appellate counsel, Wynn filed a motion for reduction of sentence, which

the Superior Court dismissed as moot because the Delaware Supreme Court had jurisdiction over Wynn's direct appeal. *Id.* The Delaware Supreme Court affirmed Wynn's convictions and sentence on June 27, 2011. *See Wynn*, 23 A.3d at 145.

In February 2012, Wynn filed a *pro se* Rule 61 motion, which the Superior Court denied on May 22, 2012. (D.I. 21 at 4) The Delaware Supreme Court affirmed that judgment. *See Wynn v. State*, 67 A.3d 1024 (Table), 2013 WL 2368610, at *3 (Del. May 28, 2013).

In August 2013, Wynn, through counsel, filed another motion for reduction of sentence. (D.I. 21 at 5) The Superior Court denied that motion and issued a corrected letter order on August 20, 2013. *See State v. Wynn*, 2013 WL 4493622 (Del. Super. Ct. Aug. 20, 2013).

## II.    GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

3

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971).  AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the
> applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at

844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the

exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the

state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural

manner permitting the court to consider the claims on their merits. *Bell*, 543 U.S. at 451 n.3;

*Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules

preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d

Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989).  Although treated as technically

exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman*

4

*v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

5

*House v. Bell*, 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C.  Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).  Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  This deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210.  This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear

---

[1]A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

Wynn's timely filed habeas petition asserts four grounds for relief: (1) defense counsel provided ineffective assistance by coercing Wynn to plead guilty; (2) defense counsel provided ineffective assistance by failing to investigate or prepare an adequate defense; (3) the State breached the plea agreement by making certain comments during the sentencing hearing; and (4) Wynn was denied his right to review the presentence investigation report (PSI).

### A.   Claim One:  Defense Counsel Coerced Wynn to Enter Guilty Plea

In claim one, Wynn contends that defense counsel provided ineffective assistance by coercing him to plead guilty.  Wynn asserts that, "a few weeks prior to trial, defense counsel informed him that one of the State's witnesses was a former client of his which had become a conflict in the case," and that "counsel started to coerce and threaten him to take a plea." (D.I. 8 at 17)  According to Wynn, defense counsel was operating under a conflict of interest and continued to threaten that if Wynn did not take a plea, counsel would be forced to withdraw from the case and Wynn would not be entitled to any monetary refund.  (D.I. 25 at 5-6)  Wynn also contends that defense counsel coerced him into pleading guilty by misinforming him that the sentence would be capped at eight years.  Wynn presented this claim to the Delaware Supreme Court on post-conviction appeal.  (D.I. 23 at 20-23)  Therefore, he will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.[1]

---

[1] Wynn presented his argument regarding defense counsel's misinformation about the eight year sentence cap in his Rule 61 motion and on post-conviction appeal, but neither the Superior Court

The clearly established law governing the instant ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Supreme Court did not specifically apply the *Strickland/Hill* standard in affirming the Superior Court's decision. Nevertheless, the court concludes that the Delaware Supreme Court's decision

nor the Delaware Supreme Court addressed the issue within the context of an ineffective assistance of counsel claim. In these circumstances, the court must presume that the Delaware courts adjudicated the argument on the merits. *See Harrington*, 562 U.S. at 99.

8

was not contrary to *Strickland/Hill,* because the Delaware case[2] cited by the Delaware Supreme

Court refers to the applicable precedent. *See Fahy v. Horn,* 516 F.3d 169, 196 (3d

Cir.2008)(Supreme Court of Pennsylvania's decision was not "contrary to" clearly established

Federal law because appropriately relied on its own state court cases, which articulated the

proper standard derived from Supreme Court precedent); *Williams,* 529 U.S. at 406 ("[A] run-of-

the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the

facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry under § 2254(d)(1) is not over, because it must also determine if the

Delaware Supreme Court's denial of claim one as meritless involved a reasonable application of

the *Strickland/Hill* standard.  When performing this inquiry, the court must review the Delaware

Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims

through a "doubly deferential" lens. *See Harrington,* 562 U.S. at 105.  In other words, "the

question is not whether counsel's actions were reasonable, [but rather], whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Delaware Supreme Court provided two reasons for affirming the Superior Court's

rejection of Wynn's contention that defense counsel coerced him to plead guilty.  First, it

determined that "there is no basis to overrule the Superior Court's finding that Wynn's claim of a

coerced guilty plea was refuted by his trial counsel's sworn affidavit, which the court found

credible." *Wynn,* 2013 WL 2368610, at \*2.  Second, given the absence of clear and convincing

evidence to the contrary, the Delaware Supreme Court concluded that Wynn was bound by the

following representations he made during the guilty plea colloquy: (a) no one had threatened him

---

[2]The Delaware Supreme Court cited *Mercer v. State,* 26 A.3d 214 (Table), 2011 WL 2927774,
at\*2 (Del. July 20, 2011) which, in turn, cites *Strickland.*

or coerced him in any way to plead guilty; (b) he was entering the plea of his own free will; and (c) he believed it was in his best interest to do so. *See Wynn*, 2013 WL 2368610, at *2.

It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that creates a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, the transcript of Wynn's plea colloquy contains his clear and explicit statements that he had discussed his case with defense counsel, that the statements on the Truth-in-Sentencing Guilty Plea Form he signed were complete and accurate, that nobody forced him to enter a plea, and that he understood that he was pleading guilty to two counts of second degree assault, two counts of possession of a firearm during the commission of a felony, and first degree reckless endangering. (D.I. 23-4 at 12-14) During the plea colloquy, the judge asked Wynn if he understood that the plea agreement deal was "a final decision," one which he could not take back if he was not happy with his ultimate sentence; Wynn responded affirmatively. (D.I. 23-4 at 14) The judge emphasized that Wynn's sentencing was being deferred for a PSI report and that all sentence recommendations made by the PSI report, the State, and defense counsel were just that, "recommendations," and that the sentencing court could impose up to the maximum seventy-one years of incarceration. (D.I. 23-4 at 13) Wynn responded he understood. *Id.* The judge also emphasized that the penalties that could be imposed were greater than the eight years recommended by the State, and Wynn responded he understood. *Id.* At no point during this colloquy did Wynn assert that he had misunderstood the potential penalties and that he wished to withdraw his plea and, when asked if he had any questions, Wynn responded "no." (D.I. 23-4 at 14) In fact, Wynn answered affirmatively to indicate that he understood the rights he was forfeiting under the plea agreement, and that no one had coerced him to take the plea "in any way." *Id.*

10

In addition, defense counsel's Rule 61 affidavit explains that:

> A few days prior to entry of the plea, counsel was provided with a list of the names of the witnesses on the porch at the time of the shooting. One of those witnesses was a former client of mine. I informed Mr. Wynn of this fact prior to the entry of the plea and I informed him that he had two choices: (a) take the plea, or (b) go to trial. If he decided to go to trial, I informed him that I would have to notify the Court of the potential conflict and, therefore would likely be excused from the case. Mr. Wynn elected to take the plea because of the extensive amount of minimum mandatory time he was facing had he gone to trial and lost, therefore, this conflict never arose. At no time did counsel tell [Wynn], "you just have to plead guilty."

(D.I. 8-1 at 32-33) The Rule 61 affidavit also explains that defense counsel reviewed the Truth in Sentencing Guilty Plea Form with Wynn prior to accepting the plea, and that, as a result, Wynn was put on notice that the maximum Level V sentence could be seventy-one years if he was found guilty by a jury. (D.I. 8-1 at 33)

After viewing Wynn's unsupported allegations of coercion regarding defense counsel's "conflict of interest"[3] and counsel's alleged misinformation about the eight year sentencing cap

---

[3] A Sixth Amendment conflict-of-interest claim is treated as a special type of ineffective assistance of counsel claim, because prejudice will be presumed if the attorney actively represented conflicted interests that adversely affected his/her performance. *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). To prevail on an ineffective assistance of counsel claim based on a conflict of interest, a petitioner "must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* An actual conflict of interest arises when "trial counsel's interests and the defendants' interests diverge[] with respect to a material factual or legal issue or to a course of action." *Government of Virgin Islands v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984). As explained by the Third Circuit, an "actual conflict" arising from defense counsel's active representation of conflicting interests is established by showing (1) some plausible alternative defense strategy might have been pursued, and (2) the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. *See United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999). "[T]he conflict must cause some lapse in representation contrary to the defendant's interests . . . [which] can be demonstrated not only by what the attorney does, but by what he refrains from doing." *Mickens v. Taylor*, 535 U.S. 162, 173 (2002). However, courts must keep in mind the principle that "defense counsel is in the best position to determine if a conflict exists." *Id.* at 167-68.

Here, the fact that one of the potential jurors was defense counsel's former client did not create an actual conflict of interest. Nothing in the record supports Wynn's contention that defense counsel "chose to induce [a] plea upon [Wynn] for his personal convenience" and to

11

in context with defense counsel's explanation and the plea colloquy transcript, the court

concludes that Wynn's unsupported allegations fail to provide compelling evidence as to why the

statements he made during the plea colloquy should not be presumptively accepted as true.  As

such, the court concludes that the Delaware Supreme Court reasonably applied *Blackledge* in

affirming the Superior Court's holding that Wynn was bound by the representations he made

during his plea colloquy and that his guilty plea was voluntary.

Moreover, Wynn cannot satisfy the prejudice prong of the *Strickland/Hill* standard.

Wynn was charged with sixteen offenses, nine of which were felonies.  On the felony charges

charges alone, Wynn faced a potential maximum sentence of 225 years at Level V incarceration,

and the Superior Court noted that the State's evidence on those charges was strong.  (D.I. 23-5 at

15)  As a result of pleading guilty, Wynn was convicted of five offenses, and the remaining

eleven charges were *nolle prossed*.  The maximum aggregate sentence for all five of Wynn's

convictions was seventy-one years, but the plea agreement recommended eight years at Level V,

six of which were the minimum mandatory.  Given the substantial benefit Wynn derived from

pleading guilty, the court concludes that Wynn's instant assertions fail to demonstrate that he

would have proceeded to trial but for defense counsel's actions.

---

avoid having to refund Wynn money.  In turn, Wynn's own statements under oath regarding his
satisfaction with defense counsel's representation contradict his instant contention regarding
defense counsel's coercive actions.  Thus, the court may not presume prejudice and must review
Wynn's contention regarding defense counsel's alleged conflict of interest/ineffective assistance
of counsel under *Strickland* and *Hill*'s two-pronged standard.

For all of these reasons, the court cannot conclude that the Delaware Supreme Court's denial of claim one was based on an unreasonable determination of facts or an unreasonable application of the *Strickland/Hill* standard. Accordingly, the court will deny claim one for failing to satisfy § 2254(d).

### B. Claim Two: Defense Counsel did not Investigate or Prepare a Defense

In claim two, Wynn contends that defense counsel failed to investigate or prepare an adequate defense. Wynn did not present this argument to the Superior Court in his Rule 61 motion or to the Delaware Supreme Court on post-conviction appeal, and a new Rule 61 motion would be time-barred under Rule 61(i)(1). Therefore, as the State asserts, claim two is procedurally defaulted, which means that the court cannot review the claim's merits unless Wynn demonstrates cause and prejudice, or that a miscarriage of justice will result from the absence of review.

In an exercise of prudence, the court presumes, without deciding, that the failure to appoint representation for Wynn during his Rule 61 proceeding makes the limited exception to the procedural default doctrine under *Martinez v. Ryan,* 132 S.Ct. 1309, 1315 (2012) applicable to Wynn's situation. As such, the court presumes that Wynn has demonstrated cause for his default.

Nevertheless, Wynn cannot satisfy the prejudice prong of the exception to the procedural default doctrine. Significantly, Wynn does not provide any supporting facts for his contention that defense counsel did not investigate or prepare a defense, and his conclusory allegation is insufficient to demonstrate that he will be prejudiced if the claim is not reviewed on the merits. In addition, as explained with respect to claim one, Wynn is bound by the representations he made during the plea colloquy that he was satisfied with counsel's performance. *See infra* at 10-

13

13. Finally, Wynn's failure to provide new reliable evidence of his actual innocence prevents the court from reviewing the claim under the miscarriage of justice exception to the procedural default doctrine. For all of these reasons, the court will deny claim two as procedurally barred from habeas review.

### C. Claim Three: State Breached Plea Agreement

In his third claim, Wynn contends that the State breached the plea agreement during the sentencing hearing by making certain comments he believes proposed a harsher sentence than the "capped" eight year sentence it recommended in the plea agreement. The Delaware state courts denied this claim as both meritless and procedurally defaulted under Rule 61(i)(3) because Wynn failed to raise the issue at sentencing or on direct appeal, and he did not demonstrate that review of the claim was warranted under Rule 61(i)(5). (D.I. 8-1 at 43-44); *Wynn*, 2013 WL 2368610, at *2. The State contends that the court should deny the claim as procedurally barred due to the Delaware state courts' application of Rule 61(i)(3), because the Delaware state courts' determination that the claim was meritless constituted an alternative decision to the procedurally barred decision. While the court concurs that an alternative decision on the merits does not prevent a federal habeas court from relying on a state court's enforcement of a state procedural bar, in this situation the court will exercise prudence and proceed to analyze whether the Delaware Supreme Court's denial of claim two as meritless warrants relief under § 2254(d).

Wynn asserts that the State made a "verbal agreement with [him] and defense counsel [to] not make any comments at sentencing which in turn would be a cap." (D.I. 8 at 23) He contends that the State violated the plea agreement by "proposing and making comments concerning a [] harsher sentence" than the eight year sentence it recommended in the plea agreement (D.I. 27 at 5), and he appears to focus on the following comments: (1) the State's

14

description of Wynn's actions as "deplorable and inexcusable" (D.I. 8-1 at 9); and (2) the State's

statement to the judge that Wynn's explanation for the shooting in the PSI report was a "lie" and

a "completely ridiculous story." (D.I. 8-1 at 9)

On post-conviction appeal, the Delaware Supreme Court denied this argument as

meritless because, "[a]t no time during the sentencing proceeding [] did the prosecutor argue that

Wynn should receive a sentence greater than eight years, as Wynn would have us conclude. To

the contrary, the transcript reflects that, as to the sentence Wynn should receive, the prosecutor

stated, "[p]er the plea agreement . . . the State is recommending the eight years." *Wynn*, 2013

WL 2368610, at *2.

Pursuant to *Santobello v. New York*, 404 U.S. 257, 261-63 (1971), plea agreements are

analyzed under contract law standards. *See United States v. Nolan-Cooper*, 155 F.3d 221, 236

(3d Cir. 1998). Where a purposeful or inadvertent breach of a plea agreement occurs, the breach

must remedied regardless of whether the defendant was prejudiced. *See Dunn v. Colleran*, 247

F.3d 450, 458 (3d Cir. 2001).

In this case, the plea agreement specifically states that the "State will recommend 8 years

Level 5, followed by probation." (D.I. 23-1 at 28) Although Wynn contends that the State and

defense counsel verbally agreed the State would not make any statements during the sentencing

hearing, Wynn has presented no evidence supporting the existence of such an agreement. To the

extent Wynn believes that the State promised to recommend "capping" the sentence at eight

years, as opposed to "recommending" the imposition of an eight year sentence,[4] his

---

[4]For instance, in his motion for an evidentiary hearing, Wynn contends that "the fact of whether a cap existed is in dispute because [defense counsel] sent Wynn a correspondence letter stating that the State did agree to cap the recommendation to 8 years. However, the cap was not listed on the guilty plea form or mentioned in open court at the plea colloquy." (D.I. 48 at 2)

misunderstanding of the semantics used does not establish that a breach occurred. Notably, pursuant to the plea agreement, the State's responsibility during the sentencing hearing was to recommend an eight year sentence, which it did. Even if the State had agreed to recommend "capping" the sentence at eight years, that "cap" would only have been a recommendation. During the plea colloquy, Wynn was informed that the sentencing court was not bound by the sentence recommendation of the State, and he was also informed that he faced a maximum sentence of seventy-one years of incarceration. Thus, the court rejects Wynn's specious argument that recommending an eight year sentence instead of recommending an eight year "cap" constituted a breach of the agreement in this case.

Finally, after reviewing the record, the court concurs with the Delaware Supreme Court's decision that the State's ancillary comments did not violate the plea agreement for three main reasons: (1) the State explicitly recommended an eight year sentence; (2) as noted by the Superior Court, the State's "comments can hardly be seen as more problematic for [Wynn] than the words of the victims or the fact [Wynn] sought to bribe the victims to change their testimony" (D.I. 8-1 at 53); and (3) the State never suggested that the sentencing judge should consider Wynn's PSI remarks as a reason to increase the sentence. Thus, the court concludes that the Delaware Supreme Court's holding that the State's comments did not breach the plea agreement constituted a reasonable determination of the facts under § 2254(d)(2), and also does not warrant relief under § 2254(d)(1). Accordingly, the court will deny claim three.

### D. Claim Four: Right to Review Presentence Investigation Report

In his final claim, Wynn contends that his constitutional rights were violated when he was denied his right to review the PSI report prior to sentencing. (D.I. 8 at 25) He supports this argument by citing 18 U.S.C. § 3552(d)'s requirement that a PSI report must be disclosed to

16

defense counsel and the defendant at least ten days prior to sentencing. (D.I. 8 at 26) This argument is unavailing, because 18 U.S. C. § 3552(d) only applies to reports generated in federal criminal proceedings, and is not applicable to state court criminal proceedings. Rather, Wynn's right to review the PSI report was (and is) governed by Delaware Superior Court Criminal Rule 32(c)(3), which provides that defense counsel or a *pro se* defendant have a right to read the presentence investigation report at least seven days before the imposition of the sentence.

It is well-established that "[s]tate courts are the ultimate expositors of state law,"[1] and claims based on errors of state law are not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Distilled to its core, claim four alleges an error of state law. Therefore, the court will deny claim four for failing to assert a proper basis for federal habeas relief.

### E. Pending Motions

During the pendency of this proceeding, Wynn filed a motion for an evidentiary hearing (D.I. 48) and a motion for partial summary judgment (D.I. 49). As previously discussed, the court has concluded that the claims alleged in the instant petition must be denied as meritless. Accordingly, the court will deny Wynn's motions as moot.

## IV.    CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2);

---

[1]*Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Wynn's petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Wynn's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.

18